Michael J. Frevola
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
EL KENZ DENIZCILIK NAKLIYAT VE TICARET LIMITED SIRKETI

RECEIVED
JUN 03 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EL KENZ DENIZCILIK NAKLIYAT VE TICARET LIMITED SIRKETI,

Plaintiff,

-against-

STAHLIMEX STAHLHANDEL GMBH,

Defendant.

08 Civ. 2217 (MGC)

**VERIFIED SECOND AMENDED COMPLAINT**

Plaintiff, EL Kenz Denizcilik Nakliyat Ve Ticaret Limited Sirketi ("EL Kenz" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified second amended complaint against Stahlimex Stahlhandel GmbH ("Stahlimex" or "Defendant"), alleges, upon information and belief, as follows:

1. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      At all times material herein, EL Kenz is and was a business entity organized and existing under the laws of Turkey with its principal place of business at Cenap Sahabettin Sok. No:4, Kosuyolu 34718 Istanbul – Turkey.

3.      Upon information and belief, at all times material herein, defendant Stahlimex is and was a business entity organized and existing under the laws of a foreign country with a principal place of business at Im Ruhbaum 4, 69412 Eberbach, Germany.

4.      On or about December 21, 2007, EL Kenz, as owner, and Stahlimex, as charterer, entered into a voyage charter party (the "Charter") for the M/V SUN RAYS ("Vessel"), which Charter was memorialized via a fixture recap, dated December 21, 2007. A true and correct copy of the fixture recap is annexed hereto as Exhibit 1.

5.      The Charter included the standard GENCON 76 Part II charter party terms with logical amendments. A true and correct copy of GENCON 76 Part II is annexed hereto as Exhibit 2.

6.      The Charter also included rider clauses from an earlier Stahlimex charter party, dated October 26, 2005. A true and correct copy of the rider clauses is annexed hereto as Exhibit 3.

7.      The terms of the Charter designated the Dellys port of Algeria on a "GSPB AAAA" basis meaning that charterer must designate a good safe port berth always accessible and always afloat.

8. The Vessel arrived at Dellys on December 20, 2007. The Vessel, however, was not allowed to berth and EL Kenz was informed on December 24, 2007 that Stahlimex was not going to perform under the Charter.

9. The Vessel's inability to berth at Dellys constitutes a breach of Stahlimex's obligation to provide a safe port berth pursuant to the terms of the Charter. As a result of said breach, and Stahlimex's subsequent failure to perform under the Charter, EL Kenz suffered damages in the amount of $250,000 as can best be presently estimated.

10. The Charter is governed by English law, which routinely allows for costs, including a reasonable allowance for attorney's fees.

11. Upon information and belief it will take two years to bring this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs:

| | |
|---|---|
| Interest (at 6.0% from December 24, 2007 through March 5, 2010): | $ 33,000.00 |
| Attorneys' fees | $ 100,000.00 |
| Total Principal Claim: | $ 250,000.00 |
| Total Sought: | **$ 383,000.00** |

12. Stahlimex is not found within the Southern District of New York but does have goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the

jurisdiction and held in the name(s) of Stahlimex Stahlhandel GmbH with, upon information and belief, the following financial institutions: Bank of America, N.A.; Bank of China; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular, or any other financial institution within the Southern District of New York.

**WHEREFORE**, EL Kenz Denizcilik Nakliyat Ve Ticaret Limited Sirketi prays:

1. That a summons with process of attachment and garnishment may issue against the defendant, Stahlimex Stahlhandel GmbH; and if defendant cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the district may be attached in an amount sufficient to answer plaintiff's claim;

2. That defendant Stahlimex Stahlhandel GmbH and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of EL Kenz Denizcilik Nakliyat Ve Ticaret Limited Sirketi and against Stahlimex Stahlhandel GmbH in the amount of US$383,000.00 (including estimated interest, expenses and attorneys' fees); and,

4. That this Court grant EL Kenz Denizcilik Nakliyat Ve Ticaret Limited Sirketi such other and further relief which it may deem just and proper.

Dated: New York, New York
June 3, 2008

HOLLAND & KNIGHT LLP

By: ______________________

Michael J. Frevola
Lissa Schaupp
195 Broadway
New York, NY 10007-3189
Tel: (212) 513-3200
Fax: (212) 385-9010

*Attorneys for Plaintiff*
*EL Kenz Denizcilik Nakliyat Ve Ticaret Ltd. Sirketi*

VERIFICATION

STATE OF NEW YORK )
:ss.:
COUNTY OF NEW YORK )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for EL Kenz Denizcilik Nakliyat Ve Ticaret Limited Sirketi ("EL Kenz"), plaintiff in the foregoing action. I have read the foregoing Verified Second Amended Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by EL Kenz and corresponded with EL Kenz's representatives regarding this matter. I am authorized by EL Kenz to make this verification, and the reason for my making it as opposed to an officer or director of EL Kenz is that there are none within the jurisdiction of this Honorable Court.

Michael J. Frevola

Sworn to before me this
3rd day of June, 2008

Notary Public

Linda M. Wilkens
Notary Public, State of New York
No. 01WI9672455
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 30, 2010

# 5373117_v1

# EXHIBIT 1

Case 1:08-cv-02217-MGC Document 1 Filed 03/05/2008 Page 7 of 19

**Pınar**

**Kimden:** Rederiet Otto Danielsen [od@ottodanielsen.com]
**Gönderme Tarihi:** Cuma 21 Aralık 2007 19:17
**Kime:** ELKENZ
**Konu:** SUN RAYS / STAHLIMEX - FINAL RECAP OF M TERMS AND PF CP AMMNDMNTS

STAHLIMEXI chp - rider.DOC (51...

GENCON 1976 UNTED CL BLANK F

REDERIET OTTO DANIELSEN A/S - A company within the Tschudi Group Kongevejen 272a, DK 2830 Virum, Denmark - Phone: +45 4583 2555 Telefax: +45 4583 1707 internet-email: od@ottodanielsen.com

Ref: 071221-TV00030148.

PINAR / THOMAS

We are pleased to advise revised final recap of the main terms and pforma chp ammendaments asf :

MV SUN RAYS
CS 4LUW / IMO 7711658 / BLT 1978 / FLG GEORGIA
DWT 2869 / DWCC 2700 / GT NT 1811 / 949 / LOA : 90.76 M LBP : 83,24 M / BREADTH :13.2 M DEPTH : 6.3 M G/B 4060 CBM / 9XPONTOONS / 4,91 MAX DRAFT HOLD SIZE NO1 / HATCH NO 1 6,23 X 10,4 X 5,4 HOLD SIZE NO2 / HATCH NO 2 37,14 M X 10,4 X 5,4 HOLD SIZE NO3 / HATCH NO 3 6,23 X 10,4 X 5,4 -owners confirm that hatches have same dims and holds. -owners to send midship crossection. -WEIGHT OF EACH OF THE 9 PONTOONS ABT 8-9 MTS - THERE ARE SOME CELL GUIDES FOR CONTAINERS IN HOLDS NO.1 AND 3. -HOLDS ARE NOT SEPERATE FM EACHOTHER, THEREFORE VSL CAN BE CONSIDERED AS ONE HOLD. -pandi club- British Marine -head owners: Elegand Maritime -vsl and managers are ism certified. -vsl is isps fitted -vessels hull and machinery insured WITH: MILITARY MOSCOW -vsl always to be in conformity with applicable laws in load and discharging countries and united nations proclamations owners responsible for all costs/consequences if in violation of these applicable laws a/o above warranty. -above fixture to remain p/c, any disclosing of details being prohibited -the owners confirm the vessel is able to trade all ports/countries as given in the charter-party and is aware of local regulations/restrictions. -ALL CHRTRS / ONWERS SUBS / STEM ARE LIFTED

-ACCNT - STAHLIMEX GmbH Germany
-DELLYS (MAX DRFT 5.00) / NEMRUT BAY - 1GSPB AAAA BENDS
-UP TO FULL AND COMPLETE CAPACITY AT 5 MTRS DRFT AT CHOPT STEEL SCRAP IN BULK HMLESS / NON RADIOACTIVE, NON-DANGEROUS, NON OILY , EXCLUDING MOTOR BLOCKS, TURNINGS, HEAVY PIECES, RADIOACTIVE PIECES, SF ABT 55 / 60' WOG OWNERS GTEE THAT MASTER WILL COOPERATE IN EVERY RESPECT FOR VESSEL TO LOAD AS MUCH CARGO AS POSSIBLE AND LIMITATE TRIM FORE OR AFT IN SUCH A WAY THT VESSEL LOADED TO BE AS MUCH AS POSSIBLE ON EVEN KEEL. -AS SOLE CGO -L/C 19TH/22ND OF DEC, 2007 -AT LOAD/DISCH PORT LOADED AND DISCHARGED CARGO QTTY TO BE DETERMINED BY DRAFT SURVEY AND MASTER/OWS TO BE RESPONSIBLE FOR THE QUANTITY SIGNED IN. OWS GTEE THAT DRAFT MARKS AFT/MIDDLE /FORWARD ARE READABLE AND VESSEL CAN PROVIDE ALL CALIBRATION TABLES ,PLANS, DRAWINGS AND DOCUMENTS NECESSARRY TO CARRY OUT THE DRAFT SURV, AT INSPECTORS SATISFACTION . -DRAFT SURVEY ON CHRTRS ACCT /owners time -HEAD OWNERS TO APPEAR AS CARRIERS IN THE BILLS OF LADING -FRT usd 115000 lmpsm fios bss upto vsl's fcc and complete cargo at 5 meters

drft
-FRT PAYABLE 100 PCT ( INCLUDING COMMISSIONS ).INTO OWS NOM BANK ACCT w/i max 3 B. DAYS after S/R COB BS/L MARKED 'FRT PAABLE AS PER CHP' IF BS/L MARKED 'FREIGHT PREPAID' ARE REQUESTED ORIGINAL TOBE KEPT BY AGNTS AND RLSD ONLY UPON OWS RCVD BANK SWIFT DTLS OF IRREVOCABLE REMITTANCE OF FRT TO OWS. -frt payable against invoice faxed to chrtrs via brok channel w/i max 6 whours after loading completed and then THE ORIGINAL couriered w/i max 24 hrs after loading completed -LOAD / disch 4.5 TTL WWDAYS OF 24 CONS HRS FHEX /SHEX UU FOR ALL PURPOSES INCL FULFILING OF CARGO CUSTOMS FORMALITIES. completed -AT LDPORT TIME FM THU NOON OR DPH 17H TILL SAT OR DAH 08H NTC UU AT DISPORT TIME FM SAT NOON OR DPH 17H TILL MON OR DAH 08H NTC UU -NOR TO BE GIVEN W/I THE LCAN AND ONLY DURING OFFICE HOURS SAT TO THU AT LPORT AND LTIME TO COMMENCE AS

PER 08/14 CL WWWW -hold cleaning to be for owners accnt / ownrs time -DEMM USD 2725 PDPRFD -dem to be paid w/i 20 days after completion of discharging, right and true delivery of the cgo and presentation of owns time sheet with all supporting docs duly signed / stamped by all parties concerned including shippers/receivers. IF THEY ARE NOT AVAILABLE, THEN AGENT / MASTER ONLY -AT CHRTRS OPTION MASTER TO SIGN ONLY M/R AND OWNERS / MASTER TO AUTHORIZE AGENT AT LOADPORT TO SIGN/RELEASE BS/L ON THEIR BEHALF. FOR THE PURPOSE TO HIDE SHIPPERS NAME TO RECEIVERS ( THUS TO AVOID THEM TO BY-PASS CHRTRS AND APPROACH SHIPPERS DIRECTLY FOR A NEW LOT OF CARGO ) AGENTS ARE ALLOWED TO CHANGE SHIPPERS NAME IN THE BS/L. -IN CASE ORIGINAL BS/L NOT AVAILABLE AT DISPORT, CARGO TO BE DELIVERED AGAINST LOI SIGNED BY CHRTRS/SHPRRS ONLY NOT BY THE BANK; WORDING TO BE AGREED BETWEEN OWNERS AND CHRTRS. -OWS TO APPOINT CHRTRS AGENT AT LOADPORT : SEACOM AGENCIES
PIC: Mr. Fawzi tel 00213 21 71 66 52 / 97
-Charterers AGENT AT DISPORT
Mertas Nakliyat ve Ticaret AS
Head-office Istanbul: +90 216 452 56 00 (PIC Mr. Turgay Iyicil) AND Aliaga office: PIC Mr. Hikmet OZKAN, tel. 0090 232 625 54 19,

fax 0090 232 625 54 25
-Charterers will support owner to get competetive d/a from agent. -OPENING / CLOSING HOLDS ON CHRTRS ACCT BUT TIME FOR THE SAME NTC -STEVEDORES DAMAGES, IF ANY, TOBE SETTLED DIRECTLY OWS/STEVEDORES CO. -TXS/DUES ON CRGO ,INCL EXINS DUE VSL AGE, CHRS ACCNT

-SAME ON VSL OWS ACCNT GEN AVRGE/ARB IN LNDN-ENGLISH LAW TO APPLY -TTL BROK COMM TO BE PAID TO UNIMAR IMMEDIATELY AFTER FREIGHT RECEIVED INTO OWNERS BANK ACCOUNT AND OWNERS TO ISSUE SIGN AND STAMP " COMISSION NOTE " ( AS PER P/F ) IN THS RESPECT. -5 % TTL COMM FOR UNIMAR BROKERAGE -OWISE AS PER CHRTRS PF GCN 76 CHP AMMENDED AS FOLL :

general
--
wherever contrary to the final recap or respective provision is missing, any box and / or clause of the cp to be ammended, adapted to, completed and/or filled up in accordance with the final recap;
+

AMMENDAMENTS TO PART ii OF GENCON 76 ==================================

CL 1
DELETE "STEAMER OR" ;
DELETE TWO TIMES " OR SO NEAR THERETO AS SHE MAY SAFELY GET AND LIE ALWAYS AFLOAT".
+

CL 2
DELETE FM "DAMAGE CAUSED BY CONTACT.. " AT LN 37 TO THE END OF THE CLAUSE.
+

CL 3
REPLACE "..IN ANY ORDER ,FOR ANY PURPOSE" W I T H "EN ROUTE ,IN CONNECTION WITH THIS VOYAGE" .
+

CL 4
DELETE FM 'IN CASH AT LN 47..TO THE END OF THE CL'
ADD "SEE ALSO ADIT CL 20+21"
+

CL 5
DELETE (a) GROSS TERMS.
+

CL 6
TO BE AMMENDED AS PER RECAP
+

CL 7
DELETE : "10 RUNNING DAYS ON"
DELETE : "PAYABALE DAY BY DAY TO BE ALLOWED MERCHANT ALTOGETHER"
+

CL 8

DELETE THREE TIMES "DAMAGE FOR DETENTION"
+

CL 10
DELETE 2ND PARAGRAPH IN FULL
+

CL 11
DELETE IN FULL
ADD "SEE ADIT CL 25"
+

CL 13
DELETE IN FULL
ADD "SEE ADIT CL 44"
+

CL 15
DELETE IN FULL
ADD "SEE ADIT CL 29"

Rider - as per revised p/f attached - ammended asf :
===

cl 19 D
--
'time to stop counting ... etc' - to remain
+

cl 34
Pls insert - "However, stevedores / shipers to undertake tht they'll provide reasonable protection by not dumping/dropping scrap cgo, AS PER MASTER INSTRUCTIONS AND to Master's satisfaction during loading AND CHARTERS TO SUPPORT OWNERS IN THIS RESPECT." END

Best Regards
Rederiet Otto Danielsen
Thomas Vestergaard

Direct: +45 4595 0492
Mobile: +45 2173 3773

# EXHIBIT 2

## PART II

## "Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/nett Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:
The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. **Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

3. **Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight**
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

5. **Loading/Discharging Costs**
**(a) Gross Terms*
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.
If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.
**(b) F.I.O. and free stowed/trimmed*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).
** indicate alternative (a) or (b), as agreed, in Box 15.*

6. **Laytime**
**(a) Separate laytime for loading and discharging*
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
**(b) Total laytime for loading and discharging*
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging time, as the case may be.
** indicate alternative (a) or (b) as agreed, in Box 16.*

7. **Demurrage**
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

8. **Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. **Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. **Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. **General Average**
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

12. **Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. **Agency**
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

14. **Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. **GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. **War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or by any committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations. If, by reason of or in compliance with any such direction or recommendation, anything is done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(6) All extra expenses (including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clauses 4 and 5 (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

17. **GENERAL ICE CLAUSE**

*Port of loading*

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

*Port of discharge*

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

# EXHIBIT 3

RIDER CLAUSES TO M/V / STAHLIMEX
CHARTER PARTY DATED 26TH OF OCTOBER 2005

**CLAUSE 18:A. DESCRIPTION OF VESSEL**

**B.DESCRIPTION OF HOLDS**
Vessel holds at Owner's risk and expense to be clean and free for the carriage of steel products before loading to Charterer's satisfaction and before NOR tendered at load port.In case of dispute in this respect,an idependent surveyor,mutually acceptable to both parties to be appointed,cost to be shared equally.Holds must be ready for loading with dry,clean, flat surface and the Shipper must be in a position to start the loading without further preparatory tasks.If surveyor inspection is necessary,time to cease counting immediately ; time to commence counting as per Charter Party terms immediately upon Surveyor's acceptance that holds are acceptable for loading.If surveyor deems holds were in all respects ready to load,then time to count as per original NOR tendered.

**CLAUSE 19:LOADING AND DISCHARGING TERMS**

**(A)**At load and each discharge port,Notice of Readiness to be tendered sshinc Saturday,Sunday and Holidays included,upon vessel's berthing. Master's right to tender Notice of Readiness by cable/VHF/telex in case of congestion upon arrival Roads or Anchorage within Port jurisdiction/water,provided vessel is in all respects ready to load/discharge cargo.If berth congestion,time to commence at 1400 hours if NOR is tendered before Noon or at 0800 hours next working day if NOR is tendered after Noon, whether in port or not,whether in berth or not,whether free pratique or not, whether in customs clearence or not provided this doesnot interfere with Charterer's ability to load/discharge.Time lost waiting for berth to count as laytime. Berthing / unberthing are in Owners' account and responsability and time for the same not to count. Vessel to allow loading prior to commencement of laytime and actual such time used to count.

**delete >(...FOR ALL PURPOSES INCL FULFILING OF CARGO CUSTOMS FORMALITIES. )**

Notice of readiness not to be tendered prior commencement of Laytime.

**(B)** The cargo to be loaded,and stowed,by Shipper's stevedores free of risk and expense to the vessel and to Master's satisfaction

**delete – as per c/p**

**(C)** The cargo to be loaded stowed and lashed,secured,dunnaged to the customof trade.If Master requires additional lashing,dunnaging beyond what is the custom of the trade,then costs and time to be for Owner's account.

**(D)** The cargo to be discharged by Charterer's stevedores free of risk and expense to the vessel and to Master's satisfaction

**delete - as per c/p**

**delete**

Weather Working Days of 24 consecutive hours means that bad weather will not count as laytime on 24 hours basis unless vessel is already on demmurage.Bad weather to be evidenced by Statement Of Facts.

[redacted] **delete - as per c/p**

[redacted]

[redacted]

**CLAUSE 21:OVERTIME**

Overtime to be for account of party ordering same.[redacted] – **delete**, but officer's and crew's overtime always to be for Owner's account.

**CLAUSE 22:FORKLIFTS AND LIGHTS**

Charterers to have the liberty to use rubber-wheeled for forklifts during loading/discharging operations always in accordance with vessel's tank top strengths.The ship to work at night if requested to do so.Vessel to provide lights as on board for night work and inspection purposses,if required,free of expense to the Charterers.Any extra lights that the vessel has on board to be at Charterers disposal free of expense to the Charterers.Owners will furnish specifications for tank tops/tween decks and weather deck.

**CLAUSE 23.TAXES AND DUES**

At loading and discharging port(s), any taxes/dues on freight and/or vessel to be for Owner's account.Any taxes/dues on cargo to be for Charterer's account.
Port services both ends, including berth, port, pilot, tugs, motorboat, etc to be on Owners risk and responsability and taxes/dues/fees for the same to be paid by Owners directly without involving Charterers.

**CLAUSE 24:GEAR CLAUSE**

Vessel is gearless

**CLAUSE 25:ARBITRATION**

All disputes arising out of this contract shall be arbitrated at London in the follwing manner,and subject to English Law.

One arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen.Their decision or that of any two of themshall be final,and for the purpose of enforcing any award,this agreement may be made a rule of the court.The Arbitrators shall be commmercial men, conversant with shipping matters.Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.
For disputes where the total amount claimed by either party does not exceed USD 25.000.00 The arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.

**CLAUSE 26:PROTECTIVE CLAUSES**

New Jason Clause,New Both to Blame Collision Clause,P&I Bunkering Clause, Voywar 1950

Case 1:08-cv-02217-MGC Document 1 Filed 03/05/2008 Page 16 of 19

As attached to be considered fully incorporated in this Charter Party.U.S. Clause Paramount to be incorporated in all Bills of Lading destined for the United States.Canadian Clause Paramount to be incorporated in all Bills of Lading destinated for Canada

**CLAUSE 27:NOTICES**

Owners shall give Charterers the following notices of arrival at Load/Discharge ports 3/2/1 days.
Immediately upon sailing from load port,Owners to notify Charterers in writing of the exact quantity of Charterers cargo on board and ETA at first discharge port.

**[redacted] as per c/p**

[redacted].

**CLAUSE 29:FORCE MAJEURE**

Charterers shall not be responsible for any delay if the cargo intended for shipment under this
Charter Party can not be produced,provided,delivered,loaded or discharged by reason of riots
Or lockouts of any class of workmen or stoppage of labour connected in any way with,or essential to the producing,providing,delivery,loading or discharging of the cargo,or by reason of floods,fire,snow ice,frosts,fogs,bad weather and all accidents or hindrances or other cause or causes beyond the control of the Shippers or Receivers which may prevent or delay the producing,providing,delivery,loading or discharging of the cargo,including all accidents to piers,shiploaders, and/or stoppages and hindrances,political disturbances,inserructions or interventions of constituted authorities.

In the event of the above hindrances existing on vessel's arrival at loading ports,Owners to have the option of cancelling the Charter Party, or if any of the above hindrances occur during loading,the Captain to be at liberty to sail with whatever cargo is on board.It isunderstood that Charterers will not be responsible for dead freight,damages etc. For Owner's cancellation of the Charter Party or sailing with whatever cargo is on board.

**[redacted] as per c/p**

[redacted]

**[redacted] delete**

[redacted]

**CLAUSE 32:ADDITIONAL INSURANCE**

Vessel is free of any extra insurance

**CLAUSE 33:**

Master is not to take on or pump ballast at loading/discharging ports without obtaining permission of the Charterers.Vessel is not to take or release or switch from one tank or compartments to another,any ballast,fresh water or fuel oil while the surveyor is taking draft readings and/or tank soundings.Except in order to maintain stability/trim and safety of the vessel, Master is not required to obtain any prior permission from Charterers.

**CLAUSE 34:STEVEDORE DAMAGE**

Tanktops,tunnel and all other provisions/vulnerable parts of the vessels to be adequately protected against damage at vessel's time and expense,failing which,Owners to be responsible for all consequences. **Pls insert -** However, chrtrs to undertake tht they'll provide reasonable protection by not dumping/dropping scrap cgo to master's satisfaction during loading.

Stevedores appointed by Shippers/Charterers to work under supervision of the Master and any dispute regarding damage to be settled directly between Owners and Stevedores, and Charterers to render all possible assistance.

**CLAUSE 35:DUNNAGE/SECURING**

Shippers have the option to use dunnage/wood materials and lashing/securing materials as on board the vessel,if any,but if not required,thisis to remain on board the vessel [redacted] **–delete** by Owners at their expense,in their time.
Dunnage at discharge ports to be removed at Charterers time and expense.

**CLAUSE 36:SHIFTING**

Actual shifting time from anchorage to loading and/or discharging berth not to count as laytime even if vessel already on demmurage.Expense to be for Owner's account.If vessel is required to shift between berths at either loading or discharging ports,time to count as laytime.Expense to be for Shippers/Charterer's account.

**CLAUSE 37:**

The pilot,Master;Officers and Crew of the vessel and any tow boat person or facility assisting the vessel shall not be Agent or employees of the Charterers and Charterers shall not be liable for any loss,damage or claim resulting from or arising out of negligence or error of any of them whilst vessel is proceeding to or from or laying at any place of loading or discharging.

**CLAUSE 38:BILLS OF LADING**

[redacted] The master is to sign Carrier's regular Bill of Lading form basis F.I.O.S. for the [redacted] weight to be loaded **–pls insert** ascertained by a certificated draft survey [redacted] **delete - as per c/p** If any conflicts arise between the terms of the Bills of Lading and Charter Party, the terms of the Charter Party shall govern notwithstanding any inconsistent provisions of the Bills of Lading. Bills of Lading will be issued as "Clean on Board" ,and "Freight Payable as per Charter Party".
Remarks related to cargo condition will be inserted in the Mate's Receipts and Charterers/Receivers will issue L.O.I.
[redacted] **- delete - as per c/p**

**CLAUSE 39:**

Terms of negotiation and final fixture of this Charter Party to be kept strictly Private and Confidential.

**CLAUSE 40:**

Owners are to exercise due diligince to make the ship seaworthy in all respects and to ensure the water tightness of all hatch covers and closures.If the water tightness of any hatch or closure appears to be deficient,Owners shall promptly take all measures to reinstate and repair the same and this shall be done at Owner's time and expense and for Owner's account.

**CLAUSE 41:**

Should vessel become subject to arrest and should the loading or discharge of the cargo to be delayed and/or additional costs as a result of such arrest.All direct and indirect costs,time and damages shall be for account of Owners. Should vessel for whatever reason be prevented from proceeding to second or subsequent discharge ports cargo for second or subsequent discharge port shall be discharged in the first discharge port and delivered to the port of destination as per the Bill of Lading.

**CLAUSE 42:BANKING INSTRUCTIONS**

Freight to be paid as agreed in Box 14 by telegraphic transfer to :

**To be advised**

Freight to be deemed fully earned,discountless,non-returnable upon cargo is loaded on board vessel and/or cargo lost or not lost.
Full freight to paid within **3** banking day after completion of loading after signing releasing of Bills of Lading in any case Before Breaking Bulk.

[redacted] **delete - as per c/p**

[redacted]

[redacted]

[redacted]**delete – as per c/p**

[redacted]

[redacted] **delete – as per c/p**

[redacted]

**CLAUSE 46:**

Shore tally at load and discharge port on Charterer's account.Shipboard tally by crew to be for Owner's account.Seperation and markings,if any,to be for Charterer's account.

**CLAUSE 47:AGENTS**

Charterer's agents at Load and Discharge ports.
**As advised.**

[redacted]delete

[redacted]

OWNERS                              CHARTERERS